UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES W. GAVIN, | NO:  CV-13-0312-FVS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 17 and 19. This matter was submitted for consideration without oral argument. Plaintiff was represented by Dana C. Madsen. Defendant was represented by Summer Stinson. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## JURISDICTION

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

Plaintiff James W. Gavin protectively filed for disability insurance benefits and supplemental security income ("SSI") on March 29, 2010. Tr. 124-129. Plaintiff initially alleged an onset date of April 30, 2006. Tr. 124, 126. Benefits were denied initially (Tr. 69-75) and upon reconsideration (Tr. 78-82). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Caroline Siderius on December 14, 2011. Tr. 42-64. Plaintiff was represented by counsel and testified at the hearing. *Id*. Medical expert Arthur Lorber, M.D testified. Tr. 47-49. Vocational expert Daniel McKinney also testified. Tr. 59-63. The ALJ denied benefits (Tr. 23-41) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 27 years old at the time of the hearing. Tr. 46. He dropped out of school in the ninth grade but got his GED in prison in 2010. Tr. 52-53. Previous employment included working at a variety of fast food restaurants; and making lunch on Amtrak trains. Tr. 53-54. The longest Plaintiff has held a job is six months. Tr. 54. Plaintiff testified that he cannot work because he hears voices and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

has lower back pain. Tr. 54. He sees a counselor twice a month and is prescribed

medication. Tr. 54-55. Plaintiff testified that the medication helps him no longer

hear voices. Tr. 55. He has trouble sleeping; can walk a mile in one stretch; can

stand for 20 minutes before his knees start hurting; can do some bending; can lift

ten pounds; and climbs stairs three times a day. Tr. 55-57.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1153,

1158–59 (9th Cir.2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently,

substantial evidence equates to "more than a mere scintilla[,] but less than a

preponderance." *Id.* (quotation and citation omitted). In determining whether this

standard has been satisfied, a reviewing court must consider the entire record as a

whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. If the evidence in the record "is susceptible

to more than one rational interpretation, [the court] must uphold the ALJ's findings

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 3

if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir.2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

1  404.1520(a)(4)(i)-(v); 416.920(a)(4) (i)-(v). At step one, the Commissioner

2  considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

3  416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

4  Commissioner must find that the claimant is not disabled. 20 C.F.R. § §

5  404.1520(b); 416.920(b).

6      If the claimant is not engaged in substantial gainful activities, the analysis

7  proceeds to step two. At this step, the Commissioner considers the severity of the

8  claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the

9  claimant suffers from "any impairment or combination of impairments which

10  significantly limits [his or her] physical or mental ability to do basic work

11  activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c);

12  416.920(c). If the claimant's impairment does not satisfy this severity threshold,

13  however, the Commissioner must find that the claimant is not disabled. *Id.*

14      At step three, the Commissioner compares the claimant's impairment to

15  several impairments recognized by the Commissioner to be so severe as to

16  preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

17  404.1520(a)(4)(iii); 416.920(a) (4)(iii). If the impairment is as severe or more

18  severe than one of the enumerated impairments, the Commissioner must find the

19  claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416 .920(d).

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 5

1    If the severity of the claimant's impairment does meet or exceed the severity

2    of the enumerated impairments, the Commissioner must pause to assess the

3    claimant's "residual functional capacity." Residual functional capacity ("RFC"),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his or her limitations (20 C.F.R. §§

6    404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the

7    analysis.

8    At step four, the Commissioner considers whether, in view of the claimant's

9    RFC, the claimant is capable of performing work that he or she has performed in

10    the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

11    If the claimant is capable of performing past relevant work, the Commissioner

12    must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(f); 416.920(f).

13    If the claimant is incapable of performing such work, the analysis proceeds to step

14    five.

15    At step five, the Commissioner considers whether, in view of the claimant's

16    RFC, the claimant is capable of performing other work in the national economy. 20

17    C.F.R. §§ 404.1520(a)(4)(v); 416.920(a) (4)(v). In making this determination, the

18    Commissioner must also consider vocational factors such as the claimant's age,

19    education and work experience. *Id.* If the claimant is capable of adjusting to other

20    work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § §

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 6

404.1520(g)(1); 416.920(g) (1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir.2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § § 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir.2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 30, 2006, the alleged onset date. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: bilateral knee impairment, depression, borderline intelligence, and substance abuse. Tr. 28. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 29. The ALJ then found that Plaintiff had the RFC

> to perform less than the full range of medium level work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c). The claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently. The claimant can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

eight-hour workday. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant can perform one to three step tasks with no detailed work and occasional changes in the work settings. The claimant can have no more than average production requirements. The claimant can have occasional contact with the public and coworkers. The claimant can have no more than superficial contact with children.

Tr. 30-31. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 35. At step five, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Tr. 36. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 30, 2006, through the date of this decision. Tr. 37.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts: (1) the ALJ improperly discounted Plaintiff's statements concerning the severity of his impairments; (2) the ALJ did not properly reject the opinions of the treating and examining sources; and (3) the record was sufficiently ambiguous to trigger the ALJ's duty to develop the record. ECF No. 17 at 12-20. Defendant argues: (1) the ALJ properly discounted Plaintiff's credibility; (2) the ALJ properly resolved the medical and other source evidence; (3) the ALJ was not required to further develop the record. ECF No. 19 at 6-18.

## DISCUSSION

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

**A. Credibility**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. *Id*. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2002). In making this determination, the ALJ may consider, *inter alia:* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

1    concerning the nature, severity, and effect of the claimant's condition. *Id.* Absent

2    any evidence of malingering, the ALJ's reasons for discrediting the claimant's

3    testimony must be "specific, clear and convincing." *Chaudhry v. Astrue,* 688 F.3d

4    661, 672 (9th Cir.2012) (quotation and citation omitted). Plaintiff generally argues

5    that the ALJ "improperly discounted [Plaintiff's] statements concerning the

6    severity of his impairments." ECF No. 17 at 12.

7        The ALJ did "not find all of the claimant's symptom allegations to be

8    credible." Tr. 31. The ALJ listed multiple reasons in support of the adverse

9    credibility finding. First, the ALJ found that Dr. Scott Mabee "administered the

10   MMPI-2-RF to assess the claimant's emotional functioning and the claimant's

11   score indicated an invalid profile due to over reporting psychopathology. It was

12   also noted that individuals with a score of that magnitude were typically aware of

13   their over reporting of negative symptoms." The ALJ concluded that "[t]his

14   diminishes the claimant's credibility regarding his reporting of symptoms." Tr. 34.

15   Plaintiff argues that "[t]his single invalid test result should not be the indicator of

16   [Plaintiff's] credibility" because, according to Plaintiff, he has been "consistent in

17   his reports of symptoms to his mental health care providers" and "truthful about his

18   drug relapses." ECF No. 17 at 20. However, regardless of any evidence presented

19   by Plaintiff to support a purported tendency to truthfulness; exaggeration and over-

20   reporting of symptoms is a specific and convincing reason to discredit a claimant's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 10

testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In addition

to the results of Dr. Mabee's testing, a review of the record reveals multiple notes

by medical providers questioning the reliability of Plaintiff's reporting of

symptoms. In August 2010 the "working diagnosis" by Community Health

Association of Spokane includes "malingering concerning psychotic [symptoms]."

Tr. 343, 346. In December 2010 Melissa Allman, ARNP noted that "[t]here is also

a question as to whether [Plaintiff] has experienced psychosis in the past," and Ms.

Allman again noted in January 2011 that she "question[s] the reliability of his

history." Tr. 388, 395. If the evidence in the record "is susceptible to more than

one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at

1111.  Thus, this reason is specific, clear and convincing.

The court notes this is the only specific reason challenged by Plaintiff with

specificity in his opening brief. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court may decline to address issues not

raised with specificity in Plaintiff's briefing). In his reply brief, Plaintiff challenges

the ALJ's additional reasons for the adverse credibility finding. ECF No. 20 at 4-6.

However, these arguments raised for the first time in Plaintiff's reply brief are

waived. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir.

2009).  Moreover, even if the court were to consider Plaintiff's arguments they

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 11

would be unavailing because the additional reasons offered by the ALJ to support

his adverse credibility finding were specific, clear and convincing. First, the ALJ

noted that in this type of case, where Plaintiff's statements about his symptoms

"are not substantiated by objective medical evidence," the ALJ must make a

credibility finding. Tr. 31. Subjective testimony cannot be rejected solely because

it is not corroborated by objective medical findings, but medical evidence is a

relevant factor in determining the severity of a claimant's impairments. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Next, the ALJ found that "[t]he record also supports that the claimant

engages in a wide range of activities, which is inconsistent with the alleged

severity of his limitations." Tr. 35. Evidence about daily activities is properly

considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597,

603 (9th Cir. 1989). It is well-settled that a claimant need not be utterly

incapacitated in order to be eligible for benefits. *Id*.; *see also Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain

activities…does not in any way detract from her credibility as to her overall

disability."). However, even where activities "suggest some difficulty functioning,

they may be grounds for discrediting the [Plaintiff's] testimony to the extent that

they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at

1113. Here, the ALJ cited Plaintiff's testimony that his daily activities included

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 12

watching television, playing games, going to the store, and doing his own laundry.
Tr. 35 (citing Tr. 52, 57); and the record indicated that Plaintiff attended church
and used a bus pass to attend a weekly class (Tr. 492, 504), and received his GED
while in prison (Tr. 52). Further review of the record shows that Plaintiff
previously reported occasional exercise (Tr. 265), preparing meals and doing
household chores (Tr. 307), and enjoying crafts (Tr. 338). It is noted that Plaintiff's
reports of shopping and doing dishes is moderated by moments of inattention and
anxiety in accomplishing these tasks (Tr. 240), and at the time of the hearing
Plaintiff was living in a group home where he was not required to prepare meals
and or do housekeeping (Tr. 57). However, while evidence of Plaintiff's daily
activities may be interpreted more favorably to the Plaintiff, "where evidence is
susceptible to more than one rational interpretation, it is the [Commissioner's]
conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
2005); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)("[t]he ALJ
is responsible for determining credibility").

Finally, the ALJ found that "[w]hile claimant has continued to complain of
pain, he has only engaged in conservative treatment." Tr. 32. "[E]vidence of
'conservative treatment' is sufficient to discount a claimant's testimony regarding
severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)
(noting claimant's physical ailments were treated with an over-the-counter pain

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 13

1   medication). In support of this reasoning, the ALJ cites to Plaintiff's report to

2   Brian LaSalle, ARNP on October 26, 2011 that he had pain in his knees for several

3   years that he managed by taking Tylenol every four hours. Tr. 480. Mr. LaSalle

4   prescribed Naproxen. Tr. 480. Records after this date do not include further

5   treatment for knee pain; and claimant's medication list dated December 14, 2011

6   only includes Tylenol and Naproxen (Tr. 544). This reason is specific, clear and

7   convincing.

8          For all of these reasons, and having thoroughly reviewed the record, the

9   court concludes that the ALJ supported her adverse credibility finding with

10  specific, clear and convincing reasons supported by substantial evidence.

11  **B. Medical Opinions**

12         There are three types of physicians: "(1) those who treat the claimant

13  (treating physicians); (2) those who examine but do not treat the claimant

14  (examining physicians); and (3) those who neither examine nor treat the claimant

15  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

16  *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted).

17  Generally, a treating physician's opinion carries more weight than an examining

18  physician's, and an examining physician's opinion carries more weight than a

19  reviewing physician's. *Id.*  If a treating or examining physician's opinion is

20  uncontradicted, the ALJ may reject it only by offering "clear and convincing

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 14

reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009)(quotation and citation omitted). Plaintiff argues the ALJ did not properly reject the opinions of the treating and examining sources, including: Blain Crandell, M.D.; Deborah Fisher, PAC; Lance Harris, Ph.D.; Walter J. End, MSW; and W. Scott Mabee, Ph.D. ECF No. 17 at 12-20.

**1.  Dr. Blain Crandell**

In January 2007 Dr. Crandell completed a DSHS physical evaluation assessing Plaintiff's overall work level as light and diagnosed "chronic low back pain 2° scoliosis." Tr. 247. Dr. Crandell opined that Plaintiff would be moderately limited in his ability to sit, walk, lift, handle, and carry. Tr. 247. However, Dr. Crandell placed an asterisk next to the moderate severity rating noting the need for further evaluation of Plaintiff's alleged impairment; and listed "back x-rays" under the section entitled "additional tests or consultations needed." Tr. 246-47.  The

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 15

1    ALJ gave Dr. Crandell's opinion little weight. Tr. 31. Consistency with the

2    medical record as a whole, and between a treating physician's opinion and his or

3    her own treatment notes, are relevant factors when evaluating a treating

4    physician's medical opinion.  *See Bayliss*, 427 F.3d at 1216 (discrepancy between

5    treating physician's opinion and clinical notes justified rejection of opinion);

6    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ may reject

7    treating physician's opinion that is unsupported by record as a whole, or by

8    objective medical findings). Moreover, "an ALJ need not accept the opinion of a

9    doctor if that opinion is brief, conclusory, and inadequately supported by clinical

10    findings." *Thomas*, 278 F.3d at 957.

11        In this case, the ALJ initially noted an apparent inconsistency between Dr.

12    Crandell's opinion that Plaintiff was limited to "light work due to chronic low back

13    pain secondary to scoliosis," and the notation by Dr. Crandell that Plaintiff

14    "needed more evaluation of this impairment." Tr. 31 (*citing* Tr. 246). In addition,

15    the ALJ found that Dr. Crandell's opinion was "not consistent with the objective

16    medical evidence." Tr. 31. Contrary to Plaintiff's argument that "the ALJ does not

17    attempt to identify any objective medical evidence" (ECF No. 17 at 13-14), the

18    ALJ does reference objective evidence "[a]s discussed above" in the decision to

19    determine that Plaintiff did not have a severe back disorder. Tr. 31. This evidence

20    includes negative x-rays taken in August 2010 of Plaintiff's lumbar spine. Tr. 320.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 16

1    Medical expert Dr. Arthur Lorber also testified that the record did not contain an x-

2    ray report showing scoliosis, and there "was no description of scoliosis on clinical

3    examination." Tr. 47. These inconsistencies were specific and legitimate reasons to

4    reject Dr. Crandell's opinion.[1]

5    **2. Dr. Lance Harris**

6    In February 2007 Dr. Harris examined Plaintiff and completed a DSHS

7    psychological evaluation. Dr. Harris diagnosed Plaintiff with major depressive

8    disorder, single episode, moderate; agoraphobia with a history of panic, attention

9    deficit hyperactivity disorder, NOS. Tr. 236. Dr. Harris noted that alcohol or drug

10    abuse "undoubtedly exacerbates [Plaintiff's] depressive symptoms." Tr. 237. He

11    opined that Plaintiff had marked limitations in his ability to learn new tasks,

12    exercise judgment, perform routine tasks, and interact appropriately in public

13    contacts. Tr. 237. Dr. Harris also opined moderate limitations in Plaintiff's ability

14    to understand, remember and follow complex instructions; relate appropriately to

15    ───────────────

[1] Defendant argues that the ALJ properly disregarded Dr. Crandell's opinion

16    because it was based on Plaintiff's properly discounted subjective complaints. ECF

17    No. 19 at 11. However, the court agrees with Plaintiff that the ALJ did not assert

18    that reasoning in her decision. ECF No. 20 at 2. "We review only the reasons

19    provided by the ALJ in the disability determination and may not affirm the ALJ on

20    a ground upon which he did not rely." *Orn*, 495 F.3d at 630.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 17

1  co-workers and supervisors; respond appropriately to and tolerate the pressure and

2  expectations of a normal work setting; and control physical or motor movements

3  and maintain appropriate behavior. Tr. 237.

4  　　　The ALJ gave little weight to Dr. Harris' opinion because "it was not

5  consistent with the objective findings." Tr. 33. As noted above, consistency with

6  the medical record as a whole, and between a treating physician's opinion and his

7  or her own treatment notes, are relevant factors when evaluating a treating

8  physician's medical opinion. *See Bayliss*, 427 F.3d at 1216. Here, the ALJ found

9  the marked and moderate limitations assessed by Dr. Harris were inconsistent with

10  his objective findings during the examination that Plaintiff's "thought processes

11  were found to be linear, logical and goal directed. It was also found that his

12  attention/concentration was low average. His hygiene and grooming were found to

13  be adequate. The claimant was noted to be cooperative and pleasant." Tr. 33, 239-

14  40.  Plaintiff argues that these "perceived" inconsistencies are "illusory," and

15  contends that the ALJ "emphasize[d] only the favorable portions of Dr. Harris'

16  examination and rejected or ignored the unfavorable." ECF No. 17 at 16-17; ECF

17  No. 20 at 3. Plaintiff also suggested that the ALJ's finding of internal inconsistency

18  in Dr. Harris' report "unreasonably implies that Dr. Harris does not know how to

19  conduct a psychological evaluation and/or follow the instructions on the form."

20  ECF No. 17 at 17. These arguments are inapposite.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 18

As an initial matter, the court notes that Plaintiff does not offer specific citations to "unfavorable" objective findings by Dr. Harris that were allegedly ignored by the ALJ. An independent review of the record does reveal objective findings in Dr. Harris' report that could be considered "unfavorable" including a subdued affect consistent with the alleged depression, and a below average fund of knowledge. Tr. 240. However, there were additional "favorable" findings also not identified by the ALJ, including the notation that Plaintiff was "well oriented to name, day, date, time, location, examiner and purpose." Tr. 240. Additionally, Dr. Harris found that Plaintiff's judgment per the mental status exam was "adequate," which is notably inconsistent with his opinion that Plaintiff was markedly limited in his ability to exercise judgment. Tr. 237, 240. Plaintiff is correct that the ALJ is not permitted to consider only those portions of the record that favor his or her ultimate conclusion. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). However, "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Moreover, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. The inconsistencies identified by the ALJ between Dr. Harris' opinion and his clinical notes, is a specific and legitimate reason, supported by substantial evidence, to reject his opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

**3. Dr. Scott Mabee**

In August 2010, Dr. Mabee completed a DSHS psychological evaluation of Plaintiff. Tr. 304-316. Dr. Mabee diagnosed Plaintiff with major depressive disorder, recurrent mild; psychotic disorder, NOS; polysubstance dependence sustained full remission (per patient report); borderline intellectual functioning; and personality disorder, NOS, with antisocial features. Tr. 307. In the check-box portion of the functional limitations section of the evaluation, Dr. Mabee opined that Plaintiff had marked limitations in his ability to exercise judgment and make decisions; relate appropriately to co-workers and supervisors; and respond appropriately and tolerate the pressures and expectations of a normal work setting. Tr. 308.

The ALJ assigned Dr. Mabee's opinion of Plaintiff's limitations "little weight" for several reasons. First, he found it was "not consistent with the overall evidence which supports he is stable when he is compliant with treatment, taking medication, and not abusing substances." Tr. 34. Plaintiff argues that "substantial evidence does not support the ALJ's conclusion that [Plaintiff] is stabilized by medication or that substance abuse has affected his limitations." ECF No. 17 at 19. First, Plaintiff acknowledges that "there are some references in the record where [Plaintiff] indicates that he feels as though the medication is helping, but at the same time, clinical notes often observe his affect to be flat and constricted, his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 20

ADLs poor and he [sic] malodorous, his eye contact intense, and he appear [sic] to be responding to internal stimuli." ECF No. 17 at 18 (citing Tr. 400, 402, 404, 405, 407, 409, 411, 414, 415, 420). Specifically, the ALJ notes that Melody Bernis, ARNP found that Plaintiff was stable on his current medication. Tr. 491. Plaintiff attempts to refute this statement by arguing it is "unclear what 'stable' in this context means." ECF No. 17 at 18. However, during the same visit with Ms. Bernis, Plaintiff stated he "is currently doing well." Tr. 491. In addition, Ms. Bernis reported Plaintiff was "taking his medications routinely. He denies any side effects from the medications. He's eating and sleeping well. He denies any psychotic symptoms." Tr. 491. In addition, after reviewing the records cited by Plaintiff indicating that he has a flat affect or poor ADLs, the court notes those same records often contain findings that support the ALJ's findings that Plaintiff was stable when on medications. In January 2011, Plaintiff's affect was noted as flat, but he reported his depression and anxiety was better since starting medication. Tr. 400. In February 2011, his affect was "constricted and flat" but he was on time, posture relaxed, thoughts are "logical, linear, and concrete" and his memory "appears to be intact." Tr. 402. In February 2011, his affect was flat and ADLs were fair to poor, but he denied depression and reported that his medications were helping with this symptoms. Tr. 404. In April 2011, Plaintiff presented with poor ADLs and intense eye contact, and he reported some depression but "he is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

1  managing considering his circumstances" and taking his medication as prescribed.

2  Tr. 420. This evidence could be rationally interpreted to support or refute whether

3  Plaintiff was "stable" on his medications, and thus the ALJ's conclusion must be

4  upheld. *See Burch*, 400 F.3d at 679.

5      Moreover, consistency with the medical record as a whole is a relevant

6  factor when evaluating a treating physician's medical opinion.  *See Bayliss*, 427

7  F.3d at 1216. A cursory review of the record reveals that Plaintiff was "doing

8  good" (Tr. 358); "exhibits some understanding and insight into issues and

9  problems" (Tr. 367); "stable on medications" (Tr. 375); "depression and anxiety

10  have been improving" (Tr. 383); his medication is working "and has noticed he is

11  in a better mood" (Tr. 396); "he feels as though his med[ications] are working for

12  him" (Tr. 427); and "client is stable on his current medications" (Tr. 509). For all

13  of these reasons, the ALJ's reasoning that Dr. Mabee's opinion is not consistent

14  with overall evidence indicating Plaintiff is stable when taking medications is

15  supported by substantial evidence.

16      Plaintiff additionally argues that the ALJ's reasoning that overall evidence

17  supports Plaintiff is stable when not abusing substances is not supported by

18  substantial evidence. ECF No. 17 at 18-19. The court disagrees. First, Dr. Mabee's

19  own evaluation repeatedly notes that "substance abuse will likely worsen symptom

20  severity;" and he opines that substance abuse treatment would improve Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 22

ability to work. Tr. 307. In addition, the ALJ cited to two instances of substance

abuse, and a resulting worsening of mental health symptoms. Tr. 34. First, Plaintiff

reported cocaine usage "2 weeks ago" on May 5, 2011 (Tr. 426), and at the same

time reported a "worsening of his condition" including "depressed mood." Tr. 34,

426, 433. As noted by the ALJ, Plaintiff reported several weeks later he was

"doing well" and was found "stable on his current medications" (Tr. 491); and

several months later was still found to be "stable on current medications" (Tr. 509).

Second, the ALJ found that Plaintiff "reported to a mental health counselor that he

had a slight increase in anxiety as a result of getting in trouble at his housing

facility after he was caught smoking pot." (Tr. 34 *citing* Tr. 516). Plaintiff argues

that these relapses "have no concrete or measurable effect on his psychological

condition." ECF No. 17 at 19. However, as this evidence is susceptible to more

than one rational interpretation, the court affirms the ALJ's findings. *See Burch*,

400 F.3d at 679.

      Finally, the ALJ highlighted Dr. Mabee's notation that Plaintiff's score on

the MMPI-2-RF "indicated an invalid profile due to over reporting

psychopathology" and "individuals with a score of that magnitude were typically

aware of their over reporting of negative symptoms." Tr. 34 (*citing* Tr. 310). The

ALJ found "[t]his diminishes the claimant's credibility regarding his reporting of

his symptoms." Tr. 34. Plaintiff does not identify or challenge this reasoning. *See*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 23

*Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). As discussed above, the ALJ properly discounted Plaintiff's reporting of symptoms as not credible. This is a specific and legitimate reason for the ALJ to reject Dr. Mabee's opinion.

**4. Deborah Fisher, PAC and Walter J. End, MSW**

Social workers and physician's assistants are not "acceptable medical sources" within the meaning of 20 C.F.R. § 416.913(a). Instead, they qualify as an "other source" as defined in 20 C.F.R. § 416.913(d). *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The opinion of an "acceptable medical source" is given more weight than that of an "other source." SSR 06-03p, 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). The ALJ need only provide "germane reasons" for disregarding Ms. Fisher and Mr. End's opinions. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

**i.    Deborah Fisher, PAC**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24

On February 4, 2009 Ms. Fisher, a physician's assistant, completed a DSHS physical evaluation of Plaintiff. Tr. 223-228. Ms. Fisher diagnosed Plaintiff with arthritis of the knees and hips, and scoliosis of the back. Tr. 225. She opined that Plaintiff was limited to sedentary work. Tr. 225. However, as noted by the ALJ, Ms. Fisher remarked that Plaintiff should be re-evaluated in three months and recommended an orthopedic consultation, and further imaging of knees, hips, and back to "confirm diagnoses." Tr. 267. As per her recommendation, Ms. Fisher saw Plaintiff again on February 13, 2009. Tr. 181. She found that the x-rays of the right hip were "within normal limits to my read" and the "right knee does reveal some medial joint space narrowing." Tr. 181. After examination she noted there was no swelling over the right knee, but "he is point tender over the anterior portion of the iliac crest." Tr. 181. Ms. Fisher noted that the x-rays would be "over read by the radiologist." Tr. 181.

The ALJ gave "little weight to Ms. Fisher's opinion regarding [Plaintiff's] functional limitations, as it is not consistent with the minimal objective evidence." Tr. 32. Consistency with the medical record as a whole, and between a treating physician's opinion and his or her own treatment notes, are relevant factors when evaluating a treating physician's medical opinion. *See Bayliss*, 427 F.3d at 1216; *Tonapetyan*, 242 F.3d at 1149 (ALJ may reject treating physician's opinion that is unsupported by record as a whole, or by objective medical findings). In support of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25

this reason, the ALJ cites to the radiologist's review of those same x-rays that found the right hip and right knee "unremarkable." Tr. 184. Plaintiff argues that the ALJ erred in failing to mention the "range of joint motion evaluation chart" (Tr. 227-228), and contends that "[t]his objective examination illustrated the limitations found." ECF No. 17 at 15. However, as noted above, Ms. Fisher recommended additional x-rays and studies of Plaintiff's alleged scoliosis, as well as an orthopedic consult, regardless of the results of the range of motion evaluation. Tr. 224. Ms. Fisher also assessed Plaintiff's work level as sedentary *before* she performed the objective testing referred to by the ALJ; and the record does not indicate that she re-assessed Plaintiff after those tests were performed. The ALJ had the benefit of reviewing the objective evidence contained in the entire record, including the results of the x-rays reviewed by the radiologist and deemed unremarkable. Tr. 184. The ALJ provided germane reasons to reject Ms. Fisher's opinion.

### ii.    Walter J. End, MSW

On January 5, 2010, Mr. End completed a DSHS psychological evaluation of Plaintiff while he was incarcerated. Tr. 229-232. Mr. End diagnosed Plaintiff with adjustment disorder with mixed disturbance of emotions and conduct; major depressive disorder recurrent; and polysubstance dependence. Tr. 230. He opined that Plaintiff had marked limitations in his ability to exercise judgment and make

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 26

1    decisions; and his ability to respond appropriately to and tolerate the pressure and

2    expectations of a normal work setting. Tr. 231. He also assessed moderate

3    limitations in Plaintiff's ability to understand, remember and follow complex

4    instructions; learn new tasks; care for self, including personal hygiene and

5    appearance; and control physical or motor movements and maintain appropriate

6    behavior. Tr. 231. Mr. End noted that Plaintiff reported making "poor choices

7    when under the influence of mind altering substances." However, he also noted

8    that Plaintiff was cooperative with treatment while incarcerated and would like to

9    continue treatment after his release; and Plaintiff had "significant positive results

10   after being properly medicated." Tr. 232.

11          The ALJ gave little weight to Mr. End's opinion for two reasons. First, the

12   ALJ noted that "the undersigned does not find that the claimant's symptoms result

13   in any marked limitations." Plaintiff correctly argues that this reason is neither

14   specific nor legitimate. ECF No. 17 at 17. It is inappropriate for the ALJ to

15   substitute his own medical judgment for that of medical professionals. *See Tackett*

16   *v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999); *see also Rohan v. Chater*, 98

17   F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play

18   doctor and make [his or her] own independent medical findings"). However, this

19   error in reasoning is harmless because the ALJ articulated germane reasons for

20   rejecting Mr. End's opinion that were supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 27

Specifically, the ALJ found that "[t]he evidence supports that the claimant's symptoms were stable on medication when he was not abusing substances." Tr. 33. Plaintiff asserts precisely the same arguments he used to challenge the ALJ's rejection of Dr. Mabee's argument, discussed in detail above, that the ALJ's reasoning substantial evidence does not support the ALJ's reasoning that Plaintiff's symptoms were stabilized by medication or affected by substance abuse. ECF No. 17 at 18-19. For the same reasons discussed above in the section regarding Dr. Mabee, the court finds the ALJ's reasons for rejecting Mr. End's opinion were germane and supported by substantial evidence.

**C. Duty to Develop the Record**

The ALJ has a special duty to develop the record fully and fairly to ensure a claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150. However, "[a]n ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150 ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 28

Plaintiff argues that the record was sufficiently ambiguous to trigger the ALJ's duty to develop the record. ECF No. 17 at 14. Upon questioning by the ALJ as to whether Plaintiff met or equaled a listed impairment, medical expert Dr. Lorber testified that although "there is mention of scoliosis currently on x-ray, we do not have that x-ray report. It apparently is in the thoracic area because x-rays of the lumbar spine were described as normal." Tr. 47. Plaintiff contends that this testimony "implies the existence of some evidence of the disease." ECF No. 17 at 14. However, it is Plaintiff's duty to prove he is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled."). Moreover, to establish the existence of a medically determinable impairment, the Plaintiff must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

Interestingly, aside from his testimony, Plaintiff did not allege limitations on his ability to work due to scoliosis or back pain. *See* Tr. 69, 72, 78, 80, 140, 174. Most importantly, Plaintiff does not cite to any objective evidence in the record, including signs or symptoms that would establish a medically determinable impairment, due to scoliosis of the thoracic area. As discussed above, back x-rays

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 29

of the lumbar spine were negative. Tr. 320. Dr. Lorber also testified that there was "no description of scoliosis on clinical examination" and "no evidence of focal neurologic deficit in either the upper or lower extremities." Tr. 47.  An independent review of the record does not reveal any reference to scoliosis on x-ray. For all of these reasons, the court finds no ambiguity that would trigger the ALJ's duty to further develop the record.

## CONCLUSION

After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** this 11th day of September, 2014.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 30